This is a case of a district court that articulated, but failed to apply, the appropriate standards of review and instead substituted its own judgment as to the sufficiency of the evidence in this case. I'll begin with a discussion of the appropriate legal standards under AEDPA and Jackson v. Virginia. Explain how the state adduced sufficient evidence and explain how the district court therefore erred in applying the standards. As this court knows, the standard under AEDPA is that district courts must maintain a conviction unless it resulted in a decision that was contrary to or involved in unreasonable application of clearly established federal law. And the district court in this case did set forth that AEDPA standard in her memo. This court has described that as being a very limited standard and it is not something that a district court disagrees with. It's not second-guessing reasonable decisions of district court and it's not even something that's incorrect or erroneous, leaving open the possibility that a district court could disagree with state courts. Instead it has to be objectively unreasonable. This is a difficult to meet and doubly deferential standard. The clearly established federal law in this case was Jackson v. Virginia. That after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements beyond a reasonable doubt. It leaves it up to the trier of fact in this case, the trial court judge, their responsibility to resolve conflicts in evidence, to weigh the evidence, and to draw reasonable inferences. Those are not decisions for the district court. Habeas courts are not to re-weigh evidence and must resolve all inconsistencies in favor of the prosecution. Even if there are conflicting inferences, of course, or any number of things that could have happened or any possibilities that defendants may proffer, a habeas court must presume that the trier of fact resolved those inconsistencies in favor of the prosecution and must defer. Similarly, we need not rule out every hypothesis. It's worth mentioning again that the district court used the correct AEDPA standard, used the correct Jackson standard, and noted that the state courts did the same, but she failed to apply them. So, sufficiency of the evidence. How did the state, in fact, prove robbery? In Missouri, robbery is a forcible stealing, that during the taking of a property that's not one's own, you use either cause or threaten the use of serious physical injury. In this case, of course, a serious physical injury was used in the course of that stealing. And for the purpose of preventing or overcoming any resistance or fighting back for the taking of the property. And, of course, armed criminal action, doing so with the use of a weapon, in this case, a concrete block. So, what were the facts supporting the robbery here? The defendant told the victim's friend on his own earlier that evening that he was broke, he didn't have any money, and there had been previous fiduciary transactions between the victim and the defendant earlier that day. They were both together at an ATM in which the victim withdrew money and gave it to the defendant. We have this on video, so we know that the defendant knows the victim has money and has been privy to receiving that. They were seen together at a grocery store very close to the ATM, about a mile away. Later on that evening, again, these two were still together with the money, with the wallet still on the victim. And the defendant killed the victim several hundred yards away from that store. The district court, in this case, did not take any issue with the finding regarding murder. So, we do know for sure that the defendant killed the victim. The victim's wallet was found outside of that grocery store in a trash can, empty of all cash. And, later on, the defendant was seen wearing the victim's hat and had taken the victim's hat from the scene to later wear and then stashed in an empty lot. So, we know that he not only took his wallet, he also took his hat. So, what went wrong here? The district court seemed to be hung up on circumstantial evidence. Of course, it's not been the rule for many years in this court or in Missouri State courts that the prosecution can't use circumstantial evidence, which it did in this case. The district court took issue with the fact, in her words, the only evidence of stealing was that the victim had withdrawn money and given the defendant some of it. Of course, the district court ignores the fact that the defendant was saying earlier that evening that he was broke and needed money, that the defendant killed the victim just very close to that ATM where the wallet was found, right by the crime scene, and then he also took something else at the same time from the victim's hat. So, that being said, she agrees, kind of arguendo, that there was enough evidence of stealing, but the nexus between the stealing and the violence is problematic. She acknowledges that the defendant had a meager income, but noted that there was no intent to steal from the victim. Of course, the state does not need to prove motive in the state of Missouri, and the only two intents that we can find in robbery is the intent to not give the money back, so deprive the owner permanently of the money. Of course, he never gave the victim the money back because he was dead, and the intent to use force to prevent resistance or overcome resistance or retain the property. In here, we know for sure that the defendant killed the victim and had used money later on that day that he had not had earlier. The district court points to brutality of the attack, something from the First Circuit, of course, not binding on this court, that a brutality of attack generally points away from robbery, of course, ignoring the fact that here the defendant was high on cocaine and alcohol at the time of the murder, and that could account for the overkill. The district court takes issue with the fact that, in her words, the state didn't present any evidence when, within the secret of events, the wallet was taken. It could have happened, in her words, walking to the murder scene, the murder, and leaving the murder scene. Of course, walking to the murder scene, one does not allow your friend to take your wallet from you, so it probably didn't happen then. Walking away from the murder scene, he was no longer near the wallet because the victim was already dead, so he couldn't have taken it then. And it had to be contemporaneously with the murder. Let's change the facts a little bit. Let's say a man killed his girlfriend because he had a new girlfriend, and then took her wallet to make it look like it was a botched robbery. Would there be a sufficient nexus there for armed robbery? I think the kind of fundamental problem here is that motives don't have to be mutually exclusive. You could kill your girlfriend because you don't like her, or here, I don't know why, but that doesn't mean that it couldn't also be a robbery, that you didn't use violence in the course of taking that wallet. So as far as intent goes, I don't think you have to prove the motive for killing the victim. It could be multiple motives, I think. And in Missouri, at least we looked at Missouri for interpretation of elements, the violence can proceed or be contemporaneous with. And there are some... In my scenario, he took the wallet after the murder. Yes. And kind of robbing a corpse was one of the things that Mr. Hardin raised. But I would kind of boil it down to a most kind of simplistic scenario, armed robbery gone wrong, where someone uses force to take a wallet, but accidentally maybe kills the victim. Well, if they take the wallet after the victim's already dead, it doesn't mean it's an armed robbery. It just means that the force part was completed, or that he was dead at that time. But that doesn't mean that there wasn't an armed robbery just because the victim incidentally died. So I would say, if you look at it from that perspective, I think it would still be a robbery. So we know that it had to be a contemporaneous taking, because that's when the two were together and he didn't just take the wallet, he took the hat as well. Plus, there was a very short amount of time that all of this transpired. The district court looked to two Missouri cases, Rhodes versus Weems, to talk about I think what Judge Grunder was just discussing, which is when you have a situation where there's no confession, or we have a situation where the defendant is not telling us why he did what. In that case, maybe he said, I killed my girlfriend, but I was trying to hide it. Here, he didn't confess to the murder or to the robbery. So the district court kind of says, well, since we don't have any information from the defendant, we can't really know. But that can't be the rule either, because the state, as we all know, fairly often tries cases where defendants say nothing or say that they didn't do it. And we can't rely on defendants' admissions to be able to make our case, and that has to be drawn from circumstantial evidence and reasonable inferences that were up to the In the course of is really a broad term, and the district courts did speak to Weems and Rhodes in discussing when force could be used. In the course of is a broad term, it covers the entire transaction. As long as the fear or the violence proceeds or is contemporaneous with the taking, the offense of robbery is complete. Counsel, how would you define the whole transaction in the context of this case? Either when the force or the taking begins until the victim and the defendant are separated, either for one reason or another. And I mean physically separated. So even if one has departed and the defendant is still in the property, so he could take a wallet, take car keys, something like that, like they were talking about in Rhodes and Weems, that is still part of the entire transaction. And what happened here is exactly what the concurrence in Jackson warned about, is district courts substituting their own judgment. It's clear that the district court here did not agree with the state court's decision, meaning that she did not agree both with the trial court's finding effects and conclusions of law at the trial court level and then also the state appellate level. But that is not the standard. The standard is whether that's objectively unreasonable, not just whether we disagree with it or we think it's unfair. And here it was to any rational trigger effect who looked at this, they could have found a robbery gone wrong or some other version of events contrary to the version that Mr. Hardin proffers, but contrary to all of those things that he's said could have happened. Many things could happen. But this is something where we have a dead victim, we have a wallet and a trash can, we know that the defendant needed money, we know the defendant knew that the victim had money and we know that the defendant took multiple items from the victim at the time of the murder. So in that version of events, kind of the simplest explanation is that he was high on alcohol and cocaine, decided that he wanted that money, he needed to do things with it, whatever the next day, pay for rides, and decided to either take it and fight with him or take it and kill him and in that course, grab everything that he could from the victim. So the question is not really whether he stole from a corpse, it's whether any rational trigger effect could have found the defendant injured the victim while in the course of stealing from him and the course being that broad kind of overall scope of events. Of course, you can come up with many alternatives, but that's not the standard here. There are no further questions. I'll have a seat. Thank you. Thank you for your argument. Mr. Schottel, we'll hear from you. Good morning. Good morning. May it please the court, James Schottel, Jr., counsel for Mr. Hardin. There's a couple of things I wanted to address right off the bat with respect to the appellant's brief. Not much argument was made of it today, but in the brief, they took issue with the district courts setting out the analysis of a claim that they used the wrong standard. The judge Baker used the wrong standard and I think that's incorrect. That was not raised by counsel's argument, but I believe that the district court judge Baker correctly laid out the habeas law in her review and I think she accurately followed that law. It wasn't that Judge Baker had disagreed or just went against the court of appeals decision, is that it appeared that she went through the entire record and she found a lack of evidence. It wasn't a competing evidence of one version over the other. She found a lack of evidence to support this count, the robbery, beyond a reasonable doubt. Now, when you talk about the legal standard, she has to do more than that, right? She can't just find there's insufficient evidence to support. She has to find that it was unreasonable for the state court to reach that judgment. Correct. When reviewing that, she found that it was objectively unreasonable to come to that conclusion based upon the evidence that she did review, the entire file, all the testimony. The Williams v. Rhodes case, she used that as a comparison that it had similarities and evidence, yet in those cases, the defendant had admitted or made certain admissions, which that evidence was lacking in this case. That's the reason she pointed out those cases. What about all the circumstantial evidence? The taking of the money from the ATM, the wallet being recovered later, empty. Isn't there significant circumstantial evidence here? Well, I think there's circumstantial evidence that supports the murder, but not to the robbery. There was one sentence that the district court stated in her opinion, that a killer and a thief does not a robber make. I think that the evidence that you're talking about that is in the file, that is in the district court review, I don't think it supports the robbery. The circumstantial evidence points more toward the murder than it does the robbery, I believe, because there is . . . Well, the wallet, the taking of the money, the person being in need of money, the wallet being gone and then found empty, really doesn't have much to do with the murder, does it? Well, it could . . . it also, like was discussed before, could have happened after the murder. You mean the theory is that he killed the man for reasons unrelated to money, but then thought, well, as long as he's dead, I might as well take the money? That's . . . Something like that? Right. That's one of the . . . I think that's one of the things that the district court . . . That seems like an argument that could have been made at the trial, but are you sure that's compelled, that scenario is compelled by the evidence as opposed to the scenario that he killed him in order . . . as part of the taking of the money? Well, I think that's the trouble that the district court had in deciding the case is that, is there enough to prove Mr. Harden beyond a reasonable doubt? There . . . That would be the argument at trial, but here is whether it would be objectively unreasonable for the state court to have found the evidence to be sufficient. Right. And it seems like these are just two alternative hypotheses that both of which are quite possible, so how is it objectively unreasonable for the state court to have found that it was during the course of the robbery? I think it's because of the forcible stealing. The circumstantial evidence that you're referring to, I don't think that leads to the forcible stealing. That's the robbery. That's the part that's missing is that in the state, it admits that they don't have that evidence and that they tried cases on circumstantial evidence, but I think what the district court pointed out is that circumstantial evidence does not point to the forcible stealing part, the robbery. The circumstantial evidence may point to the other things like the murder, but not to the forcible stealing, those elements that are missing. I think that's what just . . . Well, she certainly said there was a gap in the evidence, that there was no direct evidence as to what happened during that certain period of time, but there is the circumstantial evidence of where the wallet was found and how it was found and evidence of the ATM withdrawals that we talked about earlier, so I guess the question is whether that's enough to support a reasonable finding of sufficiency, huh? Right, and that's the question that the court faces. And let's see, there's one other thing I wanted to point out while we're on that. Excuse me, let's see. Yeah, the appellant in their brief did point to a Sutton v. Wallace case, but that was it's focused on just the district court's opinion and the Missouri case law on it, and the only two cases that we found were the Rhodes v. Weems case that I've already discussed. I believe that the district court gave a full analysis of the evidence in the case, and she did give the appellate decision deferential treatment, but just because an appellate decision makes its decision, we can't just, in the habeas world, the district court can't just turn a blind eye. It has to give an independent review of the evidence, and I think that's what Judge Baker did in the case, and she found it objectively unreasonable for this conviction, and we had asked that this court affirm Judge Baker's ruling on that. If there's no further questions, thank you, Judge. Now, did this end up with a magistrate judge by consent of the parties? Yes, it did. Okay. Very well, thank you for your argument. Thank you. Do you have anything you wish to add in rebuttal? All right, very well, you may. Why don't you readjust the microphone, Ms. Dolan, if you would. Thank you. I forgot to adjust it for him. Just two points, Your Honor. As far as my opponent's point about using the wrong standard or attacking, I guess, the district court for using the wrong standard, that's not true. I think there's a misunderstanding there about what we did in the brief. It's not that the district court did not list the right standard. She did, she just didn't apply it, and what our brief took issue with was the fact that she didn't give the appropriate deference or cite the EDPA deference that had been decided after Jackson in her recitation of some of the law, but overall, she did a pretty good job listing the law correctly, but that was just, we need to give the EDPA deference an the memo, which it was not. As to my opponent's conversation with Judge Colleton about inferences, of course, there are many conflicting inferences in any case. Not as many in this particular one, but there are many conflicting inferences. We have to assume that all of those issues were raised at trial, that they were argued, and that they were disregarded by the fact finder here, which was the trial court judge. We have to assume that they found in favor of the prosecution because the prosecution had proved their case to them, and that they chose the path that would allow them to find robbery in the first degree, or in this case, that the judge did that, and we have to give that finding deference, and that did not happen here. It's not to say that a district court or habeas court can't review the evidence. She was entitled to do that, but what you can't do is reweigh the evidence and reconsider all of those inconsistencies and inferences that were decided at the trial court level. Thank you. Very well. Thank you both for your arguments. The case is submitted, and the court will file an opinion in due course.